IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Cindy Meredith Hughes, | ) | C/A No. 2:14-cv-03021-JMC-MGB |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | REPORT AND RECOMMENDATION |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Plaintiff Cindy Meredith Hughes, through counsel, brought this action to obtain judicial review of an unfavorable final administrative decision denying benefits on her March 22, 2011 and March 24, 2011 applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). *See* Section 205(g) of the SSA, as amended, 42 U.S.C. Section 405(g). This matter was referred to the Magistrate Judge for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).

**Procedural History and ALJ's Findings**

The Plaintiff was born August 19, 1961 and was 49 years old on the alleged onset of disability date, November 1, 2010. (R. 194.) The Plaintiff filed for DIB and SSI on March 22, 2011, and March 24, 2011, respectively. (R. 194, 202.) The Plaintiff claimed disability due to seizures, severe depression, post-traumatic stress disorder ("PTSD"), anxiety/panic attacks, and chronic pain. (R. 255.) The Plaintiff's claims were initially denied and denied on reconsideration. (R. 25.) Following a hearing, the Administrative Law Judge (ALJ) denied her

claim on November 14, 2012. (R. 39.) The Plaintiff has exhausted her administrative remedies. The ALJ's decision is now the Commissioner's final action for purposes of judicial review. In making the determination that the Plaintiff is not entitled to benefits, the Commissioner adopted the following findings of the ALJ's November 14, 2012 Decision (Id.):

> (1)    The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.
>
> (2)    The claimant has not engaged in substantial gainful activity since November 1, 2010 the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
>
> (3)    The claimant has the following severe impairments: colitis, seizure disorder, pulmonary atelectasis and fibrosis, post-traumatic stress disorder (PTSD), depression, and obsessive-compulsive disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> (4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
>
> (5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no ladders, ropes, or scaffolding. The claimant can climb ramps or stairs frequently but must avoid all exposure to hazards. Although the claimant can manage simple instructions, she should have no more than occasional superficial contact with the general public, in an environment with few changes to the workplace or to the working conditions, and no spoken interaction with the general public. In addition the claimant should have no exposure to gases, dusts, fumes, or other respiratory irritants.
>
> (6)    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> (7)    The claimant was born on August 19, 1961 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).
>
> (8)    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416-964).
>
> (9)    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not

> disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> (11) The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 25-39.)

## Applicable Law

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The Act also provides that SSI disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. *See* 42 U.S.C. § 1381 *et seq*. "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. *See* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); 42 U.S.C. § 1382c(a)(3)(A) (definition used in the SSI context).[1]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the

---

[1] "[T]he definition of disability is the same under both DIB and SSI . . . ." *Mason v. Colvin*, C/A No. 9:12-CV-1157-TLW-BM, 2013 WL 4042188, at *2 n.2 (D.S.C. Aug. 8, 2013) (citing *Emberlin v. Astrue*, C/A No. 06-CV-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment.  *See* 20 C.F.R. § 404.1520 (DIB context); 20 C.F.R. § 416.920 (SSI context).  If an individual is found not disabled at any step, further inquiry is unnecessary. *See* 20 C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R. § 416.920(a)(4) (SSI context); *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5);  42 U.S.C. § 1382c(a)(3)(H)(i).  She must make a *prima facie* showing of disability by showing that she is unable to return to her past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *see also Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. *See Grant*, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert ("VE"). *Id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.

1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

*Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

The Plaintiff asserts the ALJ erred in the following three ways:

1. The ALJ's RFC determination is unsupported by substantial evidence, as she failed to properly account for Plaintiff's mental and social limitations.

2. The ALJ's credibility determination is unsupported by substantial evidence.

3. The ALJ's Step 5 determination is unsupported by substantial evidence as the Vocational Expert's testimony was based on an incomplete hypothetical question which did not account for Plaintiff's mental and social limitations.

(Dkt. No. 18 at 1.)

### 1. The ALJ's RFC Determination

The Plaintiff alleges the ALJ erred in her residual functional capacity ("RFC") analysis by failing to properly account for the limitations included in the opinions of Dr. Ray and Dr. Ducote and by failing to account for the Plaintiff's stutter. "[R]esidual functional capacity is the most [the Plaintiff] can still do despite [her] limitations." Felton-Miller v. Astrue, 459 F. App'x 226, 230 (4th Cir. 2011) (quoting 20 C.F.R. §§ 404.1545(a)). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis...." SSR 96-8P (S.S.A. July 2, 1996); *accord Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (internal quotations omitted). The RFC must be based upon all relevant medical evidence and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3). The ALJ must consider the cumulative effect of a Plaintiff's multiple impairments in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir.1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments." (citations omitted)).

> Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*.

SSR 96–8p, 1996 WL 374184, at *2 (emphases in original).

The ALJ "must consider all the evidence and explain on the record the reasons for his findings, including the reason for rejecting relevant evidence in support of the claim." *King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980). "Even if legitimate reasons exist for rejecting or discounting certain evidence, the [ALJ] cannot do so for no reason or for the wrong reason." *Id*.

However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir.2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir.2005) (per curiam)). As the party attacking the Commissioner's decision, the plaintiff carries the burden to show that prejudice resulted from any error. *Shinseki v. Sanders*, 556 U.S. 396, 409–10, 129 S.Ct. 1696, 1705–06, 173 L.Ed.2d 532 (2009).

The ALJ gave considerable weight to the opinions of Dr. Ducote and Dr. Ray.[1] (R. 36-37.) Dr. Ducote opined that the Plaintiff, due to her stuttering, "would be able to engage in work activity which does not require meeting the public, answering the phone or giving directions. She would do best in a non-stressful employment situation with a small group of fellow employees.[2]" R. 84.  Dr. Ray opined that Plaintiff is moderately limited in the ability to carry out the following work-related activities: maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 89.)  Dr. Ray explained these moderate limitations by

---

[1] Tom Ray, Ph.D., and Charlotte Ducote, Ph.D., gave their opinions in the capacity of state medical consultants.  (R. 36-37; 79-108.)

[2] The Plaintiff takes out of context Dr. Ducote's note that the Plaintiff can only be understood 75% of the time because of her stutter, which, according to the Plaintiff, "functionally limits her ability to communicate with fellow employees." (Dkt. No. 18 at 15.)   The paragraph in which Dr. Ducote stated that the Plaintiff can only be understood 75% of the time appears to be a summary of Dr. Scuddy Fontenelle's previous observation that was reviewed by Dr. Ducote. (R. 99; 350.)  Dr. Fontenelle, a psychologist in Louisiana, examined the Plaintiff on June 25, 2011. (*Id.*) Dr. Fontanelle found that the Plaintiff "shows fairly adequate expressive and receptive communication skills" and "is…able to operate…a cellphone." (R. 351.)   The Plaintiff's argument that the Plaintiff could not communicate with co-workers and therefore could not work with others is in fact contrary to Dr. Ducote's opinion. (*Id.*)  Dr. Ducote opines that the Plaintiff "would do best…with a small group of fellow employees."  (*Id.*)

opining that the Plaintiff "appears to have the capacity to meet the mental demands associated with the performance ofsimple [sic], routine tasks throughout a normal workday/workweek."  (R. 89.)  He further opined that Plaintiff is moderately limited in her ability to perform the following social and adaptive tasks: interact appropriately with the general public; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. 89-90.)  Dr. Ray explained these moderate limitations by stating that the Plaintiff "is able to interact with the general public on a limited basis[,]…interact appropriately with supervisors and co-workers[,]…[and] accept respectful supervision and constructive criticism." (R. 90.)  Dr. Ray opined that the Plaintiff "would function bst [sic] in stable work setting with minimal variation." (*Id.*)

The ALJ's RFC analysis is supported by substantial evidence and appropriately considers the opinions of Dr. Ducote and Dr. Ray.  The RFC, in pertinent part, states as follow:

> Although the claimant can manage simple instructions, she should have no more than occasional superficial contact with the general public, in an environment with few changes to the workplace or to the working conditions, and no spoken interaction with the general public.

(R. 31.)  This court finds that the RFC takes into account the limitations contained in both doctors' opinions. The RFC limits the Plaintiff to tasks with simple instructions and few changes, which reflects the doctors' opinions. The ALJ's stated limitations with the public account for the concerns that both doctors expressed concerning such interaction.  Despite the Plaintiff's argument that she cannot work with others, Dr. Ray stated she could "interact appropriately with supervisors and co-workers" (R. 90.)

Assuming *arguendo* that the Plaintiff did show the RFC did not fully account for the doctors' opinions, the Plaintiff has failed to show any prejudice as required by *Shinseki*.  The Plaintiff asserts that she is prejudiced because the VE testified that she would not be able to

maintain employment if she cannot maintain attention and concentration for more than thirty minutes. (Dkt No. 18 at 15.) Neither Dr. Ray nor Dr. Ducote placed any such limitation on the Plaintiff. There is no evidence the Plaintiff's attention span is limited in such a severe way. The ALJ properly considered and accounted for the opinions of Dr. Ray and Dr. Ducote in her RFC and properly considered and accounted for the Plaintiff's stutter by relying on the doctors' opinions.

### 2. The ALJ's Credibility Determination of the Plaintiff

The Plaintiff contends the ALJ erred by finding "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Dkt. No. 18 at 16 (quoting R. 34).) "The determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig v. Chater,* 76 F.3d 585, 594 (4th Cir.1996).

> First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.... It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig*, 76 F.3d at 593, 595. In the case at bar, the point of contention between the parties is limited to step two during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptoms] and the extent to which it affects [her] ability to work." *Id.* In its step two analysis, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "[A]llegations

concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." *Id.* (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [her] ability to work." *Craig,* 76 F.3d at 595.  A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." *Id.*  "Objective medical evidence…is a useful indicator to assist [the ALJ] in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [a claimant's] ability to work." 20 C.F.R. § 404.1529.

The Plaintiff's first assignment of error is in the wording the ALJ used in her credibility assessment. (R. 18 at 16.)  By finding the Plaintiff's testimony regarding her symptoms "not credible to the extent they are inconsistent with the above residual functional capacity assessment," the Plaintiff argues that the ALJ improperly found the Plaintiff not fully credible *because* the testimony was inconsistent with the ALJ's RFC. (*Id.*)  The Plaintiff quotes Judge Posner arguing that the language used by the ALJ "implies that ability to work is determined first and is then used to determine the Plaintiff's credibility. That gets things backwards." *See Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012).  The ALJ is not required "to use particular language or adhere to a particular format in conducting [her] analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  Since *Bjornson*, the Seventh Circuit has clarified its jurisprudence. "If the ALJ has otherwise explained his conclusion adequately, the inclusion of [the] language [in *Bjornson*] can be harmless.  *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).

In the case at bar, the ALJ properly followed the two step process in *Craig*. In finding the Plaintiff to not be fully credible, the ALJ cited numerous inconsistencies in her testimony and in her medical records. (R. 34-35.) The Fourth Circuit has not ever taken issue with the language in question. To the extent the language presents the appearance of error, such error is harmless.

The Plaintiff argues that the ALJ improperly weighed the Plaintiff's use of cigarettes as implying her allegations of breathing problems are not credible and that she could use the money she spends on cigarettes to pay for her medications. (R. 18.) The ALJ's consideration of the Plaintiff's tobacco habit is a small part of her much larger credibility analysis which included the many inconsistencies in her testimony and medical records. The Plaintiff testified on October 17, 2012, she smokes 2-3 cigarettes per day and admitted to using marijuana in the prior months, for which she tested positive in August of 2012. (R. 56 & 435.) The Plaintiff testified she had not drunk alcohol in eleven years and is a recovering alcoholic. (R. 57.) However her medical records indicated she needed to "stop drinking alcohol" in March of 2011. (R. 331.) As with the case cited by the Plaintiff, *Coleman v. Astrue*, C/A No. 1:09-cv-659-MBS, 2010 WL 3724703, the ALJ cited to substantial evidence of the Plaintiff's lack of credibility aside from cigarettes, specifically the use of marijuana.

### 3. The Hypothetical Question Answered by the Vocational Expert

The Plaintiff argues that the ALJ's hypothetical question to the VE failed to properly account for the Plaintiff's mental and social limitations in the same way as the ALJ's RFC analysis. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.1989). The question posed by the ALJ to the VE accurately reflected the ALJ's RFC finding, which this court found was supported by substantial evidence, *supra*. (R. 70-73.) The RFC and

the hypothetical question accounted for the Plaintiff's mental and social limitations. Therefore, the hypothetical question posed by the VE accurately reflected the Plaintiff's RFC as supported by substantial evidence.

## Recommendation

Wherefore, based upon the foregoing, the court recommends that the Commissioner's decision be **AFFIRMED**,

IT IS SO RECOMMENDED.

January 12, 2016

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE